IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RAYMOND CHARLES DOMINGUEZ,

    Petitioner,

vs.

DEPARTMENT OF CORRECTIONS, et al.,

    Respondents.

No. CIV S-06-0301 GEB KJM P

<u>ORDER AND</u>

<u>FINDINGS AND RECOMMENDATIONS</u>

/

    Petitioner is an inmate with the California Department of Corrections and Rehabilitation (CDCR (formerly CDC)), proceeding with an application for writ of habeas corpus under 28 U.S.C. § 2254. Petitioner initially challenged his confinement with CDCR through a complaint alleging violations of the Civil Rights Act, 42 U.S.C. § 1983. However, on April 25, 2007, the court <u>sua sponte</u> ordered that the action be re-designated as one for writ of habeas corpus under the Anti-terrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254. <u>See</u> Docket No. 11. The court also granted petitioner's request to proceed in forma pauperis and appointed him counsel. <u>Id.</u> Now before the court are respondents' motion to dismiss the second amended habeas petition, petitioner's motion for leave to file a third amended petition, and respondents' motion to dismiss the third (and as yet unfiled) amended petition.

1

I.  Factual Background

In 1984, the Superior Court of Orange County adjudged petitioner not guilty of certain sex offenses by reason of insanity and committed him to the custody of the California Department of Mental Health (DMH) for a maximum term of eighty-one years.  In 1996, the Superior Court found that petitioner "presents a high escape risk and a danger to others" and concurred with DMH's recommendation that he be transferred to the custody of CDCR pursuant to California Welfare and Institutions Code § 7301.  See First Am. Pet., Ex. G[1] (Docket No. 25). That statute states that an inmate at a state hospital may be transferred to CDCR if he "needs care and treatment under conditions of custodial security which can be better provided within the Department of Corrections...."  The statute also requires "the approval of the Director of Corrections" to effect the transfer of an inmate from DMH to CDCR.  The statute is silent on the process by which an inmate would be transferred back to the custody of DMH.

By letter to the Director of DMH, dated November 20, 1997, the Director of CDCR agreed to accept custody of petitioner and another state hospital inmate.  That letter also stated that "[i]f, in the future, CDCR custodial and clinical staff determine that care and treatment under the conditions of custodial security provided by CDC are no longer needed, CDC will initiate return of the individuals to a DMH facility."  First Am. Pet., Ex. M (Docket No. 26). Since then, CDCR has found that petitioner no longer presents an escape risk and has recommended several times that he be returned to DMH.  Id., Ex. N.  However, DMH has written to CDCR that it still regards petitioner as an unacceptable flight risk and has no intention of accepting him back into its custody until 2065, "when his CDC time expires."  Id., Ex. O; see also id., Ex. N at 28, 31.

///

///

---

[1] The Superior Court's order is erroneously docketed as the second "Exhibit F" to the first amended complaint.

II. Procedural Background

Since converting this case to one under § 2254, the court has granted petitioner leave to file amended petitions on two occasions. The second amended petition, which is currently before the court, alleges three claims: (1) that petitioner's right to due process was violated by his transfer from DMH without notice or an opportunity to be heard and by the "continuing refusal by DMH to accept petitioner's return as a patient at DMH, and the lack of any opportunity for petitioner to have a hearing on the issue;" (2) that petitioner's right to equal protection is violated by the lack of access to outpatient services while in the custody of CDCR;[2] and (3) that petitioner's right to due process is violated by the lack of adequate mental health treatment at CDCR. See Second Am. Pet. (Docket No. 38). Petitioner ultimately seeks an order that he "be discharged from his unconstitutional confinement at CDC and returned to DMH." Id. at 12.

Respondents have moved to dismiss the second amended petition, arguing that its claims are unexhausted and untimely. See Mot. to Dismiss (Docket No. 41). Petitioner has responded to the motion to dismiss with a motion for leave to file a third amended petition. Petitioner points out that the proposed petition asserts "the very same claims ... as pled in the first and second amended petitions...." Mot. to Amend at 1 (Docket No. 44). The only difference is

///
///
///
///
///
///

---

[2] Petitioner specifically seeks access to the state's CONREP program, which administers outpatient mental health services to judicially committed inmates who have been found not guilty by reason of insanity.

3

that the proposed third petition invokes the general habeas statute, 28 U.S.C. § 2241, in lieu of § 2254. Petitioner explains:

> [P]etitioner only is amending to allege his constitutional violations as conditions of confinement under 28 U.S.C. § 2241 in response to Respondent's continuing efforts to block petitioner from relief by procedural hurdles. Neither DMH nor CDC has shown any inclination to proceed with an annual review of petitioner's status.... 28 U.S.C. § 2241 does not have a comparable statute of limitations as found under section 2254, so that petitioner can proceed with the merits of his claims of constitutional violations rather than continue to litigate the procedural barriers to relief.

Id. at 6.

The parties presented their arguments on timeliness and administrative exhaustion when the motion to dismiss the second amended complaint came on for hearing on July 1, 2009. The next day, petitioner filed a Form 602 administrative appeal with CDCR. In it he demanded essentially the same relief he seeks here: (1) return to DMH; (2) a hearing on his request to be returned to DMH;[3] and (3) access to CONREP as long as he is still a prisoner with CDCR. See Pet'r's Updated Info. (Docket No. 52) at 4. All of those requests were denied, but the second level response, dated September 29, 2009, stated that CDCR would again recommend his return to DMH in October 2009. Id. at 6-7.[4]

III. Analysis

Respondents have moved to dismiss the proposed third amended petition even though the court has not granted leave to file it. See Docket No. 49. Because the third amended

/////

---

[3] In 2002, DMH issued procedures for a patient to receive a due process hearing after CDCR approves a transfer into its custody but before the transfer occurs. The procedure provides for notice and an opportunity for the patient to voice his objections and show that the grounds for the transfer are erroneous or that his behavior was justified under the circumstances. See First Am. Pet., Ex. P. These procedures went into effect several years after petitioner's transfer to CDCR. At one point in his most recently filed 602 appeal, petitioner claims he is the only transferee who has never received a hearing. See Pet'r's Updated Info. (Docket No. 52) at 4. Of course, CDCR has no power to order DMH to give him that hearing.

[4] The docket does not reflect any update in petitioner's status since October 2009.

complaint has not been accepted by the court, the motion to dismiss is premature and should therefore be denied.

    A.  The motion to file a third amended petition

        The motion to file a third amended petition, submitted for the sole purpose of avoiding the procedural requirements of § 2254 in favor of the less restrictive § 2241, is not well taken.  The Ninth Circuit has stated that "when a state prisoner begins in the district court, § 2254 and all associated statutory requirements apply no matter what statutory label the prisoner has given the case."  White v. Lambert, 370 F.3d 1002, 1007 (9th Cir. 2004) (interpreting Felker v. Turpin, 518 U.S. 651 (1996)).  White addressed a challenge under § 2241 by a prisoner who had been convicted in Washington state court but was subsequently transferred from a Washington state prison to a privately run prison in Colorado.  The court found that § 2254 was the exclusive jurisdictional basis for challenging the transfer.  The key inquiry, according to White, is

> whether at the time [petitioner] filed his habeas petition he was "in custody pursuant to a state court judgment."  The majority view of the circuits that have analyzed this question is to treat this clause as directing a status inquiry into the source of the petitioner's custody, and not an inquiry into the target of the petitioner's challenge.
> . . .
>
> [W]hen the petitioner meets the threshold requirement of being in custody pursuant to a state court judgment, § 2254 is properly seen as a limitation on the general grant of habeas authority under § 2241.  The general grant of habeas authority under § 2241, however, remains available for state prisoners who are not in custody pursuant to a state court judgment.

Id. at 1007-08.

        The petitioner in White had been convicted of a crime in Washington state court, so the "threshold requirement of being in custody pursuant to a state court judgment" was an easy question.  Here, though, petitioner was not convicted of a crime; he was committed to a state hospital after he was found not guilty by reason of insanity.  Nonetheless, his commitment

///

///

5

qualifies as "state custody" for purposes of § 2254 jurisdiction. In <u>Duncan v. Walker</u>, 533 U.S. 167 (2001), the Supreme Court stated that aside from state criminal convictions,

> there are other types of state court judgments pursuant to which a person may be held in custody within the meaning of [§ 2254]. For example, federal habeas corpus review may be available to challenge the legality of a state court order of civil commitment or a state court order of civil contempt. See, e.g., <u>Francois v. Henderson</u>, 850 F.2d 231 (C.A.5 1988)(entertaining a challenge brought in a federal habeas petition under § 2254 to a state court's commitment of a person to a mental institution upon a verdict of not guilty by reason of insanity[.])

<u>Duncan</u>, 533 U.S. at 176.

Petitioner's argument that § 2241 is an appropriate vehicle for bringing his claims to the court does not address <u>White</u> or <u>Duncan</u>, but rather offers only a short, general discussion of the interrelation of the two habeas statutes that he has put at issue.[5] <u>See</u> Mot. to File Third Am. Pet. at 6-8. Most problematic, however, is petitioner's explicit purpose in seeking to amend his petition a third time – <u>i.e.</u>, to avoid the procedural bars that threaten the viability of petitioner's action under § 2254 by simply re-pleading the same claims under § 2241. The <u>White</u> court looked askance at such a tactic, observing that allowing a petitioner to proceed under § 2241 would "circumvent" the statute of limitations and exhaustion requirements of § 2254 and "would thereby thwart Congressional intent." <u>White</u>, 370 F.3d at 1008.

Where a petitioner is confined pursuant to a state court judgment, as this petitioner is, § 2254 is the only appropriate vehicle for challenging that confinement. Therefore the motion to amend the petition and proceed under § 2241 will be denied.

---

[5] The only case petitioner cites that deals with a person committed by reason of insanity is from the D.C. Circuit Court, <u>Rouse v. Cameron</u>, 373 F.2d 451 (D.C.Cir. 1966). For present purposes, that case stands for the proposition that the writ may be available for inquiring into the adequacy of a committed petitioner's mental health treatment. Claims Two and Three of the second amended petition challenge the adequacy of petitioner's treatment, but that question is not before the court on the pending motions. The main questions here are whether the claims are timely and exhausted, and whether § 2254 or § 2241 applies. Because <u>Rouse</u> predates the passage of § 2254 by thirty years, it cannot stand as authority that § 2241 is the proper vehicle for these claims.

B.  Whether petitioner's claims are cognizable under the habeas statute

Respondents argue that the second amended petition should be dismissed because it is untimely under § 2254 and because petitioner has failed to exhaust his state remedies prior to filing the petition.  However, petitioner's own description of his claims causes the court to revisit whether its conversion of this case from one sounding in the Civil Rights Act to one falling under AEDPA still obtains, or whether the claims as presently asserted are no longer cognizable under the habeas statute.  Before reaching respondents' arguments, the court must assure itself of the jurisdictional soundness of the second amended petition.  See Demery v. Arpaio, 378 F.3d 1020, 1025 (9th Cir. 2004) (reaffirming that federal courts "have an independent duty to consider sua sponte whether a case is moot").

In arguing for his motion to amend to proceed under § 2241, petitioner states:

> Petitioner seeks to amend his petition to make the same claims under 28 U.S.C. § 2241, in lieu of 28 U.S.C. § 2254, as <u>each and every one of these claims do not question the validity of the underlying judgment but are limited to claims regarding petitioner's conditions of confinement that violate his federal constitutional rights as a state prisoner</u>.

Mot. to Amend at 2 (Docket No. 44) (emphasis added).  It is elemental that where a prisoner challenges the conditions of his confinement, his claims are cognizable in a civil rights action rather than a habeas corpus action.  See Badea v. Cox, 931 F.2d 573, 574 (9th Cir. 1991).  In Christian v. Deboo, 2007 WL 470587 (E.D. Cal.), this court dismissed a habeas petition because "[p]etitioner... is not seeking release from custody, but rather transfer to another prison where he believes he will be safer." Deboo at *1.  The court relied in part on the Seventh Circuit's opinion

///
///
///
///
///

in Glaus v. Anderson, 408 F.3d 382 (7th Cir. 2005), which reaffirmed "a clear distinction" that turns on the nature of the relief sought in a habeas petition:

> If the prisoner is seeking what can be fairly described as a quantum change in the level of custody – whether outright freedom, or freedom subject to the limited reporting and financial constraints of bond or parole or probation [– ] then habeas corpus is his remedy. But <u>if he is seeking a different program or location or environment, then he is challenging the conditions rather than the fact of his confinement and his remedy is under civil rights law</u>, even if, as will usually be the case, the program or location or environment that he is challenging is more restrictive than the alternative he seeks.

Glaus, 408 F.3d at 386-87 (emphasis added; citation omitted).

In light of petitioner's own description that "each and every one of these claims do[es] not question the validity of the underlying judgment but [is] limited to claims regarding petitioner's conditions of confinement," the undersigned must conclude that petitioner's claims are not cognizable under any habeas statute. The relief petitioner seeks – to be "discharged from his unconstitutional confinement with CDC and returned to the DMH" (Second Am. Pet. at 12) – is for a transfer in custody, not for outright release.[6] Thus, "his remedy is under civil rights law." Glaus, 408 F.3d at 387.

/////

---

[6] The Northern District of California has adopted the Fifth Circuit's "bright-line rule for resolving whether [an] action must be habeas or civil rights: if a favorable determination would not <u>automatically</u> entitle the prisoner to accelerated release, the proper vehicle is a Section 1983 case." Harrison v. Ayers, 2002 WL 102609 at *2 (quoting Carson v. Johnson, 112 F.3d 818, 820-21 (5th Cir.1997) (emphasis added)). Petitioner contends that he should be transferred back to DMH so that he can avail himself of CONREP, which provides outpatient treatment for inmates under conditional release. "Conditional release" is tantamount to release from institutionalized custody altogether, so if the only relief sought were an order that petitioner be placed directly into CONREP, that would likely qualify as a habeas claim. That is not what the petition seeks, however. It only seeks transfer back to DMH, where there is a possibility that petitioner would qualify for CONREP. Placement in CONREP is by no means "automatic." See People v. Cross, 127 Cal.App.4th 63, 72 (2005) (describing outpatient status for inmates as "a discretionary form of treatment to be ordered by the committing court") (citation omitted). Indeed the petition acknowledges the possibility that petitioner "is not yet ready for CONREP." Second Am. Pet. at 2.

The court's conclusion that this case can no longer proceed under § 2254 is not a mere technical or procedural finding. It is impossible for petitioner to obtain the substantive relief he seeks through a habeas petition. An order of transfer from this court could only be directed to a decision-making authority at DMH, since DMH, according to petitioner's allegations, is the agency blocking his transfer:

> [p]etitioner has no dispute with his classification within CDC; both he and CDC agree that he should be sent back to DMH. It is the steadfast refusal of DMH to even consider his transfer back to DMH that is the source of the constitutional violation here.

Pet'r's Resp. To Mot. to Dismiss at 2 (Docket No. 50). In a habeas case, "we must ask sua sponte whether the respondent who is named has the power to order the petitioner's release. If not, the court may not grant effective relief, and thus should not hear the case unless the petition is amended to name a respondent who can grant the desired relief." Smith v. Idaho, 392 F.3d 350, 355 n.3 (9th Cir. 2004). In his second amended petition, petitioner asks that the director of DMH be named as a respondent, but that person cannot be a proper respondent in this case as long as it is a case under § 2254. The only "proper respondent in a federal habeas corpus action is the petitioner's immediate custodian. A custodian is the person having day-to-day control over the prisoner. That person is the only one who can produce 'the body' of the petitioner." Brittingham v. United States, 982 F.2d 378, 379 (9th Cir. 1992) (citations and internal quotations omitted). Because petitioner's desired relief is for an order directed to the director of DMH, this habeas action cannot be the vehicle for seeking that relief.[7]

/////

---

[7] It appears there is another governmental authority with the power to effect a transfer – the Superior Court of Orange County. As noted above, that court authorized the original transfer pursuant to California Welfare and Institutions Code § 7301. When a person is transferred from DMH to CDCR, the sentencing court "retains jurisdiction over the individual, and the individual does not fall fully under the authority of the department of corrections as would a convicted person." Conservatorship of Estate of Edde, 173 Cal.App.4th 883, 896 (2009). That jurisdiction includes the power to assess the inmate for release into an outpatient program such as CONREP. See People v. Dobson, 161 Cal.App.4th 1422, 1432 (2008).

In light of the foregoing, the court need not address whether the claims in the second amended petition are untimely or unexhausted, as respondent has argued. Instead, the court will recommend that the petition be dismissed without prejudice and that petitioner be allowed to re-file a civil rights complaint in this action within forty-five days of the court's adoption of these findings and recommendations.[8] If this recommendation is adopted, the court anticipates providing current counsel, appointed as habeas counsel, the opportunity to notify the court if she is prepared to continue her representation of petitioner in the civil rights action. If she is not, the court will entertain a motion for withdrawal and seek appointed counsel from the court's § 1983 panel.

Accordingly, IT IS HEREBY ORDERED that the motion to file a third amended petition (docket no. 44) is denied.

IT IS HEREBY RECOMMENDED that:

1. The motions to dismiss (Docket Nos. 41 and 49) be denied without prejudice;

2. The second amended petition be dismissed for failure to state a claim on which relief could be granted; and

3. Petitioner be allowed forty-five days in which to file a civil rights complaint based on the claims and allegations asserted in the second amended petition.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written

---

[8] The court recognizes that it may, in certain limited circumstances, re-characterize a habeas petition as a civil rights action. However, there are procedural differences between habeas and civil rights actions that cannot be addressed by simply re-labeling a case under a different federal statute. See Glaus, 408 F.3d at 388-89 (noting that "there are pitfalls of different kinds for prisoners using the wrong vehicle.... [H]e or she may be subject to the three-strikes rule of the PLRA and somewhat different exhaustion requirements. Other important differences include the identity of the defendant, ... the amount of the filing fee [and] the way in which exhaustion must be accomplished...."). Here, where the court previously has re-characterized the original civil rights action as a habeas petition, the interests of justice weigh in favor of allowing petitioner/plaintiff to proceed in this action without having to refile anew.

1  objections with the court and serve a copy on all parties.  Such a document should be captioned
2  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
3  shall be served and filed within fourteen days after service of the objections.  The parties are
4  advised that failure to file objections within the specified time may waive the right to appeal the
5  District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).
6  DATED: January 22, 2010.

_____
U.S. MAGISTRATE JUDGE

4
domi0301.dismiss

11