IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RAYMOND CHARLES DOMINGUEZ,

    Plaintiff,

vs.

DEPARTMENT OF MENTAL HEALTH, et al.

    Defendant.

No. CIV S-06-0301 GEB CKD P

ORDER AND

FINDINGS AND RECOMMENDATIONS

      Plaintiff is an inmate with the California Department of Corrections and Rehabilitation (CDCR) proceeding through counsel with an action under 42 U.S.C. § 1983. The Department of Mental Health (DMH) has filed a motion to dismiss the fifth amended complaint. The court heard the motion on February 15, 2012, and ordered supplemental briefing, which the parties have timely provided.

    I. <u>Background</u>

      In 1984, plaintiff stood trial in the Superior Court of Orange County for certain sex offenses and was found not guilty by reason of insanity (NGI). Pursuant to California Penal Code § 1026.5, the Superior Court committed him to the custody of the California Department of Mental Health for a maximum term of eighty-one years. In 1996, the Superior Court found that plaintiff "presents a high escape risk and a danger to others" and concurred with DMH's

1

recommendation that he be transferred to the custody of CDCR pursuant to California Welfare and Institutions Code § 7301. See First Am. Pet., Second Exhibit F (Docket No. 25).[1] That statute states that an inmate at a state hospital may be transferred to CDCR's custody if he "needs care and treatment under conditions of custodial security which can be better provided within the Department of Corrections...." The statute also requires "the approval of the Director of Corrections" to effect the transfer of an inmate from DMH to CDCR. The statute is silent on the process by which an inmate would be transferred back to the custody of DMH.

By letter to the Director of DMH, dated November 20, 1997, the Director of CDCR agreed to accept custody of plaintiff and another state hospital committee. That letter also stated that "[i]f, in the future, CDC custodial and clinical staff determine that care and treatment under the conditions of custodial security provided by CDC are no longer needed, CDC will initiate return of the individuals to a DMH facility." First Am. Pet., Exhibit M (Docket No. 26). Since then, CDCR has found that plaintiff no longer presents an escape risk and has recommended several times that he be returned to DMH. Id. at Exhibit N. However, DMH has written to CDCR that it still regards petitioner an unacceptable escape risk and has no intention of accepting him back into its custody until 2065, "when his CDC time expires." Id. at Exhibit O; see also Exhibit N at 28, 31.

Plaintiff initially challenged his continuing custody with CDCR through a complaint alleging violations of the Civil Rights Act, 42 U.S.C. § 1983, filed February 7, 2006, in the Central District of California. That court immediately transferred the case to this court, where it was received on February 13, 2006. On April 25, 2007, the court sua sponte ordered that this action be re-designated as one for writ of habeas corpus under 28 U.S.C. § 2254. See Docket No. 11. The court also granted the plaintiff-petitioner's request to proceed in forma pauperis and appointed him counsel. Id. Then, on January 25, 2010, the court found that

---

[1] The Superior Court's order is erroneously docketed as the second "Exhibit F" to the first amended petition.

plaintiff-petitioner could no longer proceed under § 2254 on the claims as pled in the second amended petition and gave him leave to file an amended complaint under § 1983.  See Findings and Recommendations at 7-10 (Docket No. 55).  The Fifth Amended Complaint is now the operative pleading before the court.

## II. Allegations of the Fifth Amended Complaint

Plaintiff primarily complains about due process violations in his transfer to CDCR's custody in 1997 and the lack of any hearing regarding his custody ever since.  He alleges that under the terms of his court-ordered commitment to DMH in 1984, he "was to be provided the right to a sanity hearing each year thereafter."  Fifth Amended Complaint, ¶ 12A.  He avers that he was entitled to such a hearing as recently as August 2010, but "both the DMH and CDCR failed to provide him with that hearing."  Id.  He alleges that, in transferring him to CDCR, the director of DMH, Stephen W. Mayberg, "endorsed the alteration of the commitment into a CDCR sentence."  Id. at ¶ 12B.  Plaintiff also complains that he has not received adequate mental health treatment since his transfer to CDCR's custody and has been denied his right to practice his religion as a Native American.  See id. at ¶¶ 12D, 23.

The Fifth Amended Complaint enumerates five causes of action.  First, it demands injunctive relief in the form of an order that he be released from CDCR's custody, "as he is no longer classifiable as insane."  Id. at ¶ 17.  As an alternative to that relief, it asks that CDCR be ordered to return him to the custody of DMH.  Id.  Second, it seeks injunctive relief "wherein the court orders [DMH] to resume custody of [plaintiff's] person and afford him all the rights and benefits due an individual in his position, a person found not guilty by reason of insanity, committed to the custody of the DMH."  Id. at ¶ 20.  Third, it asserts various claims for violations of plaintiff's rights under the First, Fourth, Fifth, Sixth and Eighth Amendments of the Constitution.  Fourth, it alleges plaintiff has been deprived his right to substantive due process under the Fourteenth Amendment.  Fifth, it alleges intentional and negligent infliction of emotional distress, a claim that only obtains under state tort law.

3

III. Screening and proper defendants

On December 12, 2011, the court conducted the screening analysis required under 28 U.S.C. § 1915A and found that plaintiff could proceed on the following claims: (1) for an injunctive order requiring DMH to accept the transfer of plaintiff's custody from CDCR; (2) for violation of his First Amendment right to practice his religion as a Native American; (3) for deliberate indifference to his mental health needs; (4) for unconstitutional conditions of confinement; and (5) for deprivations of due process.[2] The court recommended to the district judge assigned to this case that defendants other than DMH and CDCR be dismissed from the case without prejudice.[3] The district judge assigned to this case adopted that recommendation but reinstated the plaintiff's state law claims of intentional and negligent infliction of emotional distress, which the court had originally screened out. See Order (Docket No. 88).

Because CDCR was already a defendant in this case, there was no reason to serve Cate as Director of CDCR after the screening order of December 12, 2011. However, neither DMH nor Mayberg, its Director, had been served, so the court allowed plaintiff's counsel to effect service on DMH through its agent of service or other official who can effectively receive service under Fed. R. Civ. P. 4(j)(2). The defendants were ordered to respond to the Fifth Amended Complaint in accordance with Fed. R. Civ. P. 12(a). See Order at 9 (Docket No. 73). DMH has filed the instant motion to dismiss, but CDCR has not filed anything in response to the

---

[2] Plaintiff alleges that he has never received due process on (1) his transfer to CDCR, (2) his assignment to a segregated housing unit or other adverse classifications in prison, (3) his sanity and (4) his proposed return to the custody of DMH.

[3] The Fifth Amended Complaint names two individual defendants: Matthew Cate in his official capacity as Director of CDCR, and Stephen W. Mayberg in his official capacity as Director of DMH. The complaint also names as defendants the state governmental entities CDCR and DMH. When a complaint names a government official as a defendant only in his official capacity and names the government agency or entity in which he acts as a public official, courts ordinarily dismiss the individual defendant because "the real party in interest in an official-capacity suit is the governmental entity and not the named official[.]" Hafer v. Melo, 502 U.S. 21, 25 (1991). It is redundant to retain the named official. See Rendon v. Fresno Police Dept., 2005 WL 1925859 at *4 (E.D. Cal.).

screening order.

### IV. DMH's motion to dismiss

DMH argues first that it is immune from suit under the Eleventh Amendment. Insofar as plaintiff seeks an injunction ordering his transfer back into DMH's custody or any other prospective injunctive relief, DMH is not immune.

#### A. Immunity

The Fifth Amended Complaint names Mayberg and Cate as defendants in their official capacities only. There is no allegation of individual liability anywhere in the Fifth Amended Complaint.

When a plaintiff names a state actor as a defendant in his official capacity, "the real party in interest... is the governmental entity and not the named official[.]" Hafer, 502 U.S. at 25. In other words, Mayberg in his official capacity and DMH are legally identical in this suit. Furthermore, "the Eleventh Amendment permits suits for prospective injunctive relief against officials acting in violation of federal law." Frew ex rel. Frew v. Hawkins, 540 U.S. 431, 437 (2004). A federal court may order measures ancillary to the appropriate prospective relief. See Edelman v. Jordan, 415 U.S. 651, 668 (1974).

State agencies and officials are immune from remedial or retrospective relief, such as damages, in official capacity lawsuits unless Congress has abrogated that immunity under its power to enforce the Fourteenth Amendment or the state has waived its immunity. See Frew, 540 U.S. at 437; Holley v. CDCR, 599 F.3d 1108, 1111 (9th Cir. 2010). There is no such waiver under § 1983. Therefore, to the extent plaintiff seeks damages or any retrospective injunctive relief from DMH, it is immune.

#### B. Failure to state a claim

DMH argues that plaintiff has failed to state a claim against it under the First and Eighth Amendments. Plaintiff's opposition to the motion to dismiss does not respond to this part of the motion in any way.

5

When considering whether a complaint states a claim upon which relief can be granted, the court must accept the allegations as true, Erickson v. Pardus, 551 U.S. 89, 94 (2007), and construe the complaint in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Still, to survive dismissal for failure to state a claim, a complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-557 (2007). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Furthermore, a claim upon which the court can grant relief must have facial plausibility. Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. Attachments to a complaint are considered to be part of the complaint for purposes of a motion to dismiss for failure to state a claim. Hal Roach Studios v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir.1990).

 1. First Amendment claim

The Fifth Amended Complaint claims that plaintiff's right to practice his religion as a Native American has been violated for four years at Corcoran State Prison. See Fifth Am. Compl. § 23. DMH argues that it cannot be held liable for deprivations of plaintiff's right to free exercise of religion that have occurred while plaintiff has been in the custody of CDCR. Indeed, there can be no liability under § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

There is no plausible connection between DMH and any action by prison officials to obstruct his right to worship freely. See Iqbal, supra. The complaint does not allege any policy or conduct by DMH or involvement with prison policies that could make DMH liable on

this claim. It should be dismissed.

### 2. Eighth and Fourteenth Amendment claims

Plaintiff has alleged two Eighth Amendment claims: (1) inadequate mental health care and (2) unconstitutional conditions of confinement. These claims are actionable against DMH under the Fourteenth Amendment but not the Eighth.

#### a. Substantive due process

DMH argues that individuals committed to the custody of CDCR may only challenge conditions of confinement under the Fourteenth Amendment, not the Eighth Amendment, because the Eighth Amendment only protects those who have been convicted of crimes. This argument is correct, as far as it goes. See Frost v. Agnos, 152 F.3d 1124 (9th Cir. 1998); Munoz v. Kolender, 208 F.Supp.2d 1125, 1145-46 (S.D.Cal.2002). However, the court notes that the legal standards for challenging conditions of confinement are not substantively different for civil committees as opposed to prisoners who are incarcerated upon a criminal conviction. "[C]omparable standards apply to both prisoners' Eighth Amendment cruel and unusual punishment and Fourteenth Amendment substantive due process analyses, with Fourteenth Amendment analysis borrowing from Eighth Amendment standards." Munoz, 208 F.Supp.2d at 1146. For example, individuals held under the authority granted by California's Sexually Violent Predators Act (SVPA) are protected from unconstitutional conditions of confinement under the substantive due process guarantee of the Fourteenth Amendment. Id.

In any event, DMH is correct that there should be no Eighth Amendment claim against it.

## V. Abstention

At the hearing of February 15, 2012, the court ordered the parties to submit supplemental briefing on the effect the Superior Court of Orange County's jurisdiction over plaintiff's case. The court specifically referenced the decision in In re Conservatorship and Estate of Edde, 173 Cal.App.4th 883, 896 (2009), in which the state appellate court stated that in

a case such as this one, in which a person has been transferred from a state hospital to the custody of CDCR under § 7301, "the [state] court... retains jurisdiction over the individual, and the individual does not fall fully under the authority of the department of corrections as would a convicted person." In response to the court's query, DMH now argues that the court must abstain from exercising its own jurisdiction over the plaintiff's claims, as required under Younger v. Harris, 401 U.S. 37 (1971).

In Younger the U.S. Supreme Court found that "Congress has, subject to few exceptions, manifested a desire to permit state courts to try cases free from interference by federal courts." Id. at 43. Younger and its progeny "espouse a strong federal policy against federal court interference with pending state judicial proceedings absent extraordinary circumstances." Middlesex County Ethics Committee v. Garden state Bar Association, 457 U.S. 423, 431 (1982). Younger abstention originally applied only to federal cases with criminal proceedings underlying in state court; however, the Supreme Court has since held that the Younger doctrine is fully applicable when there are non-criminal judicial proceedings in state court. See Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716-718 (1996).

Younger abstention is appropriate "when there is a pending state proceeding that implicates important state interests and provides the plaintiff with an opportunity to raise federal claims." Baffert v. California Horse Racing Bd., 332 F.3d 613, 617 (9th Cir. 2003). A federal court considering whether to invoke Younger must therefore examine: (1) the nature of the state proceedings to determine whether the proceedings implicate important state interests; (2) the timing of the request for federal relief in order to determine whether there are ongoing state proceedings; and (3) the ability of the federal plaintiff to litigate its federal constitutional claims in state proceedings. Id. The Ninth Circuit has stated that if all the necessary factors for Younger abstention are present, "the district court has no discretion; it must dismiss." Delta Dental Plan of California, Inc. v. Mendoza, 139 F.3d 1289, 1294 (9th Cir.1998), disapproved on other grounds, Green v. City of Tuscon, 255 F.3d 1086, 1104 n.18.

A. <u>Nature of the state proceedings</u>

There is no doubt that the state proceedings under which plaintiff is currently held in CDCR's custody implicate an important state interest – namely, protection of the public from someone who has committed acts of sexual abuse against children and has been adjudicated insane. See <u>Vegas v. CSP-Corcoran I</u>, 2008 WL 5068571 at *2 (E.D. Cal.) (abstaining under <u>Younger</u> in part because the underlying state action was "in aid of or closely related to" California's Sexually Violent Predators Act and therefore involved "an important state enforcement policy"). The first factor of the <u>Younger</u> inquiry is therefore present.

B. <u>Plaintiff's ability to litigate his federal constitutional claims</u>

Plaintiff responds to DMH's suggestion that the court should abstain under <u>Younger</u> by averring that DMH "has not explained how the state proceeding... would provide an adequate opportunity to raise federal questions[.]" Plaintiff's Supplemental Brief, p. 8 (Docket no. 87). "However, under <u>Younger</u>, it is the plaintiff's burden to demonstrate that state remedies are inadequate, and defendants need not establish that state law definitively permits the interposition of constitutional claims." <u>Spargo v. New York State Com'n on Judicial Conduct</u>, 351 F.3d 65, 78 (2nd Cir.2003). Plaintiff makes no attempt to show that the state courts are unable to afford a fair opportunity for plaintiff to assert that his constitutional rights are being violated by DMH's refusal to accept back into its custody, nor does the court have any reason to doubt that he would.[4]

---

[4] In <u>People v. Gram</u>, 202 Cal.App.4th 1125 (2012), a mentally disordered offender (MDO) and involuntary civil committee had been transferred to California State Prison-Sacramento pursuant to § 7301 because he presented an unacceptable risk to others at the Napa State Hospital, which is operated by DMH. <u>Id.</u> at 1132. He was later tried before the state court on the district attorney's petition to extend his commitment. <u>Id.</u> At the trial, he contended that his continued placement in CDCR's custody violated his right to substantive due process under the Fourteenth Amendment as well as his statutory rights under California law. <u>Id.</u> at 1130, 1134. The trial court declined to order the offender returned to Napa State Hospital, but it did order CDCR to place him in less restrictive custody. <u>Id.</u> at 1134. On a motion for reconsideration, the court ordered that the offender be placed in the more restrictive psychiatric services unit (PSU). <u>Id.</u>

On appeal, the intermediate state court ruled that the trial court had no jurisdiction over

C.  Whether there are ongoing state proceedings

Plaintiff contends that there is no "ongoing proceeding" in state court sufficient to trigger Younger abstention. He argues that his state criminal case was "concluded in 1984, [nor is there] a pending state court civil case." Supp. Brief at 7. Plaintiff relies on too narrow a definition of "ongoing proceeding" for purposes of Younger abstention. The recent Gram decision notwithstanding, the Superior Court of Orange County has retained supervisory jurisdiction over plaintiff's case since he was adjudged not guilty by reason of insanity in 1984. The history of plaintiff's state court case, at least insofar as it is reflected in the record before this court, and persuasive authority closely on point demonstrate that there is an ongoing proceeding in the Superior Court of Orange County.

In 1996, the Superior Court entered a minute order in which it stated that it had "read and considered" DMH's report that plaintiff was not amenable to treatment and "concurred" with DMH's recommendation that he be transferred to CDCR's custody pursuant to § 7301. See First Amended Complaint, Second Exhibit F (Docket No. 25). Since then, the

---

"the decision of whether to transfer [the offender] back to Napa or another facility under the jurisdiction of the Department of Mental Health" and that, instead, the decision "is to be made by the Director of Mental Health in conjunction with the Secretary of CDCR." Id. at 1139. Review of that decision, said the court, was available only through a petition for writ of habeas corpus in state court.

The Gram court's holding that a state superior court has no jurisdiction over DMH's decision whether to accept an offender back into its custody appears to be at odds with the Edde court's statement that the superior court retains jurisdiction over an individual even after he is transferred into CDCR's custody under California Welfare and Institutions Code § 7301. Gram does not attempt to reconcile its decision with the Edde holding, nor is there any mention of the cases in which California appellate courts have held that a superior court's authority over an NGI defendant does not come to an end when he is committed to a state hospital. See, e.g., People v. Michael W., 32 Cal.App.4th 1111, 1116 (1995); In re Cirino, 28 Cal.App.3d 1009, 1014 (1972)(stating that "[t]he court's duty, and therefore its authority, does not end, as it does in the case of the sentencing of a criminal, with execution of the commitment"). Plaintiff may or may not have to address this inconsistency in his attempt to gain release from CDCR's custody, but the existence of this unsettled aspect of California law has no bearing on whether he will, one way or another, have the opportunity to present his constitutional attack on DMH's refusal to take him back. "[U]nder Younger, any uncertainties as to the scope of state proceedings or the availability of state remedies are generally resolved in favor of abstention." Spargo, 351 F.3d at 78.

Superior Court appears to have exercised its supervisory authority at least passively: this court's record contains three letters from psychiatrists employed by CDCR to the Presiding Judge of the Orange County Superior Court, in which the psychiatrists inform the state court of their findings that plaintiff is fit to be transferred back into DMH's custody.  See First Am. Compl., Ex. N at 18-31 (Docket No. 26-4).  The letters, written in 2005, 2006 and 2007, expressly invoke the mandate of California Penal Code § 1026(f),[5] which requires periodic reports from the medical director of the facility where an NGI defendant is treated, "setting forth the status and progress of the defendant."  The statute further requires the superior court to "transmit copies of these reports to the prosecutor and defense counsel."

In Nelson v. Murphy, 44 F.3d 497 (7th Cir.1995) the Seventh Circuit addressed a civil rights case brought by two people who had been found not guilty by reason of insanity and were committed to the custody of the Illinois Department of Mental Health.  The plaintiffs challenged new mental health treatment plans that restricted their privileges to leave the grounds of the state hospital to which they were committed.  The Seventh Circuit held that Younger abstention was required, citing reasons strikingly similar to factors present in this case:

> Illinois requires the criminal court to supervise the confinement of persons found not guilty by reason of insanity. ... Every 60 days the staff of [the state hospital] filed a new treatment plan with the court for each plaintiff. ... No one doubts that the state courts had jurisdiction to consider the precise constitutional claims that have been raised in this litigation.  The cases pending in the court of Illinois are continuations of the original criminal prosecutions, and preserving a state's right to litigate criminal cases in its own courts is the core of the Younger doctrine.

Id. at 501.  Nelson is not binding authority in this court, but it is persuasive.  The Nelson court

---

[5] It appears that CDCR's medical officers have complied with § 1026(f) much more recently than 2007.  In plaintiff's supplemental brief, his counsel represents that she has "been informed by the clerk of the Presiding Judge of the Orange County Superior Court [that] a semi-annual report was... received... on January 3, 2012."  Supp. Brief at 7.  She also states that the 2006 report, which is on record in this case, "was the subject of a Minute Order on March 28, 2007, that delineated the steps that needed to be taken before Mr. Dominguez could be released[.]"  Counsel has not submitted either of these documents, but their existence supports the position that the Superior Court's supervision of plaintiff's case is "ongoing."

11

did not render the above analysis as an express finding of "ongoing proceedings," but that term squarely fits, and the Seventh Circuit's reasoning applies just as squarely to this case.

The court should find that plaintiff and DMH are involved in ongoing proceedings that implicate important state interests and provide the plaintiff with an opportunity to raise federal claims regarding DMH's continuing refusal to accept him back into its custody. It should therefore abstain from exercising its jurisdiction, pursuant to Younger.

### D. Extent of the court's abstention

The Ninth Circuit has held that "while there are only three 'threshold elements' to application of Younger, there is a vital and indispensable fourth element: the policies behind the Younger doctrine must be implicated by the actions requested by the federal court." AmerisourceBergen Corp. v. Roden, 495 F.3d 1143, 1149 (9th Cir. 2007) (citing Gilbertson v. Albright, 381 F.3d 965, 978 (9th Cir.2004)). Therefore, "the court does not automatically abstain, but abstains only if there is a Younger-based reason to abstain – i.e., if the court's action would enjoin or have the practical effect of enjoining, ongoing state court proceedings." Id.

The Ninth Circuit focuses this fourth inquiry on the interference that a federal court will create in state court if the federal court takes the action "requested." Implicit in this prudential construction of the Younger doctrine is the possibility that some – but not all – of the claims in a complaint implicate the court's duty to abstain. Here, although the Fifth Amended Complaint contains numerous and at times broad allegations of constitutional violations among its five causes of action, its final section, entitled "Relief Requested," is precise in its demands for judicial action. See Fifth Am. Compl., pp. 9-11. The court will address the applicability of the Ninth Circuit's fourth Younger factor to each.[6]

---

[6] It is significant that the principal remedies sought in this case are forms of injunctive and declaratory relief – remedies that, as opposed to money damages, are all but presumed to be unavailable when the three threshold elements of Younger are, as here, met. See Remington v. Mathson, 2010 WL 1233803 at *4 (N.D. Cal.)(stating the general principle that "a federal court should not interfere with ongoing state judicial proceedings by granting injunctive or declaratory relief unless such relief is necessary to prevent substantial and immediate irreparable

12

First, plaintiff seeks an order "releasing him immediately from all custody." Id., p. 10. The court has already ruled that this demand cannot be granted under § 1983. See Findings and Recommendations at 4-5 (Docket No. 73), adopted by the court on March 7, 2012 (Docket No. 88). Moreover, it would enjoin, if not entirely obviate, the state proceedings in the Superior Court of Orange County and therefore would be proper for abstention under Younger had the court not already ruled it out of bounds in a civil rights case.

Second, plaintiff seeks an order requiring DMH to resume its custody over him and provide him all the "planning and necessary mental health treatment, until it is determined he has been restored to sanity and ready to be released." Fifth Am. Compl. at 10. This request for relief would effectively enjoin the state court from continuing its oversight of plaintiff's case, the principal question of which, at this point, is determining the state agency that should have custody over plaintiff.

Third, plaintiff seeks an order that "the custodial facility provide plaintiff access to CONREP[7]... and eligibility for and referral to a timely and suitable out patient community treatment program[.]" Id.. Again, such an order would necessarily enjoin the state court's ability to respond to the periodic reports it receives under California Penal Code § 1026(f) in its supervision of plaintiff's treatment and progress.

Fourth, plaintiff seeks "[a] finding there is no rehabilitation program in CDCR... suitable for plaintiff while he remains under the status of 'not guilty by reason of insanity.' Therefore, if plaintiff remains in the custody of CDCR, [plaintiff seeks] a finding [that] the principles enunciated in Coleman v. Schwarzenegger are being violated by the lack of mental

---

harm")(citations omitted).

[7] According to DMH's website, of which the court takes judicial notice, CONREP is the acronym for the Forensic Conditional Release Program. Patients are eligible for CONREP if they are no longer considered to be a danger to others. Once in the program, they may be referred for outpatient treatment under conditional release. See http://www.dmh.ca.gov/services_and_programs/forensic_services/conrep/default.asp

health treatment." Id. For purposes of resolving DMH's motion to dismiss, the court need not rule whether this request for relief meets all the Younger factors, since it only goes to the constitutionality – or "suitability," as plaintiff puts it – of the mental health treatment available to him while he is in CDCR's custody. The request does not include any demand against DMH. It should therefore be dismissed in favor of DMH.[8]

Finally, DMH is immune from an award of monetary damages. See Frew, supra. Therefore DMH's motion to dismiss should be granted against any claim for damages against it.

### VI. Miscellaneous

On December 12, 2011, the court ordered both defendants to respond to the Fifth Amended Complaint within the time prescribed by Federal Rule of Civil Procedure 12(a). See Order at 9 (Docket No. 73). CDCR has failed to comply with that order. Therefore the court will order CDCR to show cause why default should not be entered against it.

Plaintiff has moved for the appointment of a psychiatrist. In light of the court's recommendation that DMH's motion to dismiss be granted, below, and the order to CDCR to show cause against the entry of default, the motion for appointment of a psychiatrist will be denied without prejudice to renewal after CDCR answers and the court issues a discovery and scheduling order.

### VII Conclusion

"Younger abstention requires dismissal of the federal claim for injunctive relief, not a stay." San Remo Hotel v. City and County of San Francisco, 145 F.3d 1095, 1103 (9th Cir.1998). That rule, together with DMH's immunity from any monetary damages award, warrants dismissal of all claims alleged against DMH.

---

[8] The court makes no finding at this point as to whether plaintiff's status as a NGI inmate who is in CDCR's custody but remains under the jurisdiction of the Orange County Superior Court includes or excludes him as a member of the Coleman class action that he references in his request for relief. The court expects it will hear argument on that issue once CDCR complies with the show cause order included herein.

CDCR will have fourteen days from the entry of this order in which to show cause why the court should not enter default against it.

Accordingly, IT IS HEREBY ORDERED that:

1. CDCR has fourteen days from the entry of this order in which to show cause why the court should not make an entry of default against it, for failure to comply with the court's order of December 12, 2011, and with Fed. R. Civ. P.12(a).

2. The motion for appointment of a psychiatrist (Docket No. 81) is denied without prejudice to its renewal after the court issues a scheduling and discovery order.

IT IS RECOMMENDED that DMH's motion to dismiss (Docket No. 75) be granted and DMH dismissed from this action.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: May 3, 2012

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE