1
2
3
4
5
6
7
8              IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10   RAYMOND CHARLES DOMINGUEZ,

11              Plaintiff,                    No. 2:06-cv-0301 GEB CKD P

12        vs.

13   DEPARTMENT OF MENTAL HEALTH, et al.

14              Defendant.              FINDINGS AND RECOMMENDATIONS

15   _____/

16              Plaintiff is an inmate in the custody of the California Department of Corrections

17   and Rehabilitation (CDCR) and is proceeding through counsel with an action under 42 U.S.C. §

18   1983.  CDCR has filed a motion to dismiss the claims levied against it in the Fifth Amended

19   Complaint.  See Dkt. No. 97.

20        I.  Background

21              In 1984, plaintiff stood trial in the Superior Court of Orange County for certain

22   sex offenses and was found not guilty by reason of insanity (NGI).  Pursuant to California Penal

23   Code § 1026.5, the Superior Court committed him to the custody of the California Department of

24   Mental Health (DMH) for a maximum term of eighty-one years.  In 1996, the Superior Court

25   found that plaintiff "presents a high escape risk and a danger to others" and concurred with

26   DMH's recommendation that he be transferred to the custody of CDCR pursuant to California

1

1  Welfare and Institutions Code § 7301.  <u>See</u> First Am. Pet., Second Exhibit F (Docket No. 25).[1]

2  That statute states that an inmate at a state hospital may be transferred to CDCR's custody if he

3  "needs care and treatment under conditions of custodial security which can be better provided

4  within the Department of Corrections...."  The statute also requires "the approval of the Director

5  of Corrections" to effect the transfer of an inmate from DMH to CDCR.  The statute is silent on

6  the process by which an inmate would be transferred back to the custody of DMH.

7       By letter to the Director of DMH, dated November 20, 1997, the Director of

8  CDCR agreed to accept custody of plaintiff and another state hospital committee.  That letter also

9  stated that "[i]f, in the future, CDC custodial and clinical staff determine that care and treatment

10  under the conditions of custodial security provided by CDC are no longer needed, CDC will

11  initiate return of the individuals to a DMH facility."  First Am. Pet., Exhibit M (Docket No. 26).

12  Since then, CDCR has found that plaintiff no longer presents an escape risk and has

13  recommended several times that he be returned to DMH.  <u>Id.</u> at Exhibit N.  However, DMH has

14  written to CDCR that it still regards petitioner an unacceptable escape risk and has no intention

15  of accepting him back into its custody until 2065, "when his CDC time expires."  <u>Id.</u> at Exhibit

16  O; <u>see</u> <u>also</u> Exhibit N at 28, 31.

17       Plaintiff initially challenged his continuing custody with CDCR through a

18  complaint alleging violations of the Civil Rights Act, 42 U.S.C. § 1983, filed February 7, 2006,

19  in the Central District of California.  That court immediately transferred the case to this court,

20  where it was received on February 13, 2006.  On April 25, 2007, the court <u>sua</u> <u>sponte</u> ordered

21  that this action be re-designated as one for writ of habeas corpus under 28 U.S.C. § 2254.  <u>See</u>

22  Docket No. 11.  The court also granted the plaintiff-petitioner's request to proceed in forma

23  pauperis and appointed him counsel.  <u>Id.</u>  Then, on January 25, 2010, the court found that

24  plaintiff-petitioner could no longer proceed under § 2254 on the claims as pled in the second

25

26      [1] The Superior Court's order is erroneously docketed as the second "Exhibit F" to the first amended petition.

1  amended petition and gave him leave to file an amended complaint under § 1983.  See Findings

2  and Recommendations at 7-10 (Docket No. 55).  The Fifth Amended Complaint is now the

3  operative pleading before the court.

4      II.   Allegations of the Fifth Amended Complaint

5      Plaintiff primarily complains about due process violations in his transfer to

6  CDCR's custody in 1997 and the lack of any hearing regarding his custody ever since.  He

7  alleges that under the terms of his court-ordered commitment to DMH in 1984, he "was to be

8  provided the right to a sanity hearing each year thereafter."  Fifth Amended Complaint, ¶ 12A.

9  He avers that he was entitled to such a hearing as recently as August 2010, but "both the DMH

10  and CDCR failed to provide him with that hearing."  Id.  He alleges that, in transferring him to

11  CDCR, the director of DMH, Stephen W. Mayberg, "endorsed the alteration of the commitment

12  into a CDCR sentence."  Id. at ¶ 12B.  Plaintiff also complains that he has not received adequate

13  mental health treatment since his transfer to CDCR's custody and has been denied his right to

14  practice his religion as a Native American.  See id. at ¶¶ 12D, 23.

15      The Fifth Amended Complaint enumerates five causes of action.  First, it demands

16  injunctive relief in the form of an order that he be released from CDCR's custody, "as he is no

17  longer classifiable as insane."  Id. at ¶ 17.  As an alternative to that relief, it asks that CDCR be

18  ordered to return him to the custody of DMH.  Id.  Second, it seeks injunctive relief "wherein the

19  court orders [DMH] to resume custody of [plaintiff's] person and afford him all the rights and

20  benefits due an individual in his position, a person found not guilty by reason of insanity,

21  committed to the custody of the DMH."  Id. at ¶ 20.  Third, it asserts various claims for

22  violations of plaintiff's rights under the First, Fourth, Fifth, Sixth and Eighth Amendments of the

23  Constitution.  Fourth, it alleges plaintiff has been deprived his right to substantive due process

24  under the Fourteenth Amendment.  Fifth, it alleges intentional and negligent infliction of

25  emotional distress, a claim that obtains only under state tort law.

26  ////

III.   Screening, proper defendants and previous ruling dismissing DMH

On December 12, 2011, the court conducted the screening analysis required under 28 U.S.C. § 1915A and found that plaintiff could proceed on the following claims: (1) for an injunctive order requiring DMH to accept the transfer of plaintiff's custody from CDCR; (2) for violation of his First Amendment right to practice his religion as a Native American; (3) for deliberate indifference to his mental health needs; (4) for unconstitutional conditions of confinement; and (5) for deprivations of due process.[2]   The court recommended to the district judge assigned to this case that defendants other than DMH and CDCR be dismissed from the case without prejudice.[3]   The district judge assigned to this case adopted that recommendation but reinstated the plaintiff's state law claims of intentional and negligent infliction of emotional distress, which the court had originally screened out.   See Order (Docket No. 88).

On January 11, 2012, DMH filed a motion to dismiss the claims against it.   The undersigned found that because the director of DMH had been sued in his official capacity only, plaintiff could make no claim for damages or for retrospective injunctive relief because state agencies and officials are immune from such claims under the Eleventh Amendment.   See Findings and Recommendations at 5 (May 3, 2012, Docket No. 90) (citing Frew ex rel. Frew v. Hawkins, 540 U.S. 431, 437 (2004), and Holley v. CDCR, 599 F.3d 1108, 1111 (9th Cir.2010)). The undersigned further found that, as to plaintiff's claim for prospective injunctive relief,

_____

[2] Plaintiff alleges that he has never received due process on (1) his transfer to CDCR, (2) his assignment to a segregated housing unit or other adverse classifications in prison, (3) his sanity and (4) his proposed return to the custody of DMH.

[3] The Fifth Amended Complaint names two individual defendants: Matthew Cate in his official capacity as Director of CDCR, and Stephen W. Mayberg in his official capacity as Director of DMH.  The complaint also names as defendants the state governmental entities CDCR and DMH.  When a complaint names a government official as a defendant only in his official capacity and names the government agency or entity in which he acts as a public official, courts ordinarily dismiss the individual defendant because "the real party in interest in an official-capacity suit is the governmental entity and not the named official[.]"   Hafer v. Melo, 502 U.S. 21, 25 (1991).  It is redundant to retain the named official.  See Rendon v. Fresno Police Dept., 2005 WL 1925859 at *4 (E.D.Cal.).

1    including an order requiring DMH to accept transfer of plaintiff's custody back from CDCR, the

2    court should abstain under <u>Younger v. Harris</u>, 401 U.S. 37 (1971).  <u>See</u> Findings and

3    Recommendations at 7-14 (Docket No. 90).  The court adopted the findings and

4    recommendations in full, and DMH was dismissed from the case without prejudice.  <u>See</u> Order

5    (Docket No. 94).

6         IV.  <u>CDCR's motion to dismiss</u>

7              CDCR moves for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).

8    That rule authorizes dismissal of a cause of action or complaint if it fails to state a claim on

9    which relief could be granted.  When a court considers a motion brought under Rule 12(b)(6), the

10   court must accept the allegations as true, <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007), and

11   construe the complaint in the light most favorable to the plaintiff.  <u>See</u> <u>Scheuer v. Rhodes</u>, 416

12   U.S. 232, 236 (1974).  However, a complaint must contain more than "naked assertions," "labels

13   and conclusions" or "a formulaic recitation of the elements of a cause of action."  <u>Bell Atlantic</u>

14   <u>Corp. v. Twombly</u>, 550 U.S. 544, 555-557 (2007).  In other words, "[t]hreadbare recitals of the

15   elements of a cause of action, supported by mere conclusory statements do not suffice."  <u>Ashcroft</u>

16   <u>v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009).  Furthermore, a claim upon which the court can grant

17   relief must have facial plausibility.  <u>Twombly</u>, 550 U.S. at 570.  "A claim has facial plausibility

18   when the plaintiff pleads factual content that allows the court to draw the reasonable inference

19   that the defendant is liable for the misconduct alleged."  <u>Iqbal</u>, 129 S. Ct. at 1949.  Attachments

20   to a complaint are considered to be part of the complaint for purposes of a motion to dismiss for

21   failure to state a claim.  <u>Hal Roach Studios v. Richard Feiner & Co.</u>, 896 F.2d 1542, 1555 n.19

22   (9th Cir.1990).

23        A.  <u>Eleventh Amendment Immunity</u>

24              CDCR first argues that the court's earlier findings with regard to official

25   immunity under the Eleventh Amendment and abstention under <u>Younger v. Harris</u> must apply

26   with equal force here.  CDCR is correct that it is immune from damages or retrospective

5

injunctive relief for any alleged violations of 42 U.S.C. § 1983. Here, those claims are for

alleged violations of plaintiff's right to free exercise of his religion as a Native American; for

alleged violations of due process; for alleged indifference to his mental health needs; and for

allegedly unconstitutional conditions of confinement. To the extent plaintiff seeks a monetary

award or retrospective injunctive relief for those or any other claims, CDCR is immune. See

Frew and Holley, supra.

B. Younger Abstention

Younger abstention is appropriate "when there is a pending state proceeding that

implicates important state interests and provides the plaintiff with an opportunity to raise federal

claims." Baffert v. California Horse Racing Bd., 332 F.3d 613, 617 (9th Cir.2003). A federal

court considering whether to invoke Younger must examine: (1) the nature of the state

proceedings to determine whether the proceedings implicate important state interests; (2) the

timing of the request for federal relief in order to determine whether there are ongoing state

proceedings; and (3) the ability of the federal plaintiff to litigate its federal constitutional claims

in state proceedings. Id. The Ninth Circuit has stated that if all the necessary factors for

Younger abstention are present, "the district court has no discretion; it must dismiss." Delta

Dental Plan of California, Inc. v. Mendoza, 139 F.3d 1289, 1294 (9th Cir.1998), disapproved on

other grounds, Green v. City of Tuscon, 255 F.3d 1086, 1104 n.18. However, the Ninth Circuit

has also held that "while there are only three 'threshold elements' to application of Younger,

there is a vital and indispensable fourth element: the policies behind the Younger doctrine must

be implicated by the actions requested by the federal court." AmerisourceBergen Corp. v.

Roden, 495 F.3d 1143, 1149 (9th Cir. 2007) (citing Gilbertson v. Albright, 381 F.3d 965, 978 (9th

Cir.2004)). Therefore, "the court does not automatically abstain, but abstains only if there is a

Younger-based reason to abstain – i.e., if the court's action would enjoin or have the practical

effect of enjoining, ongoing state court proceedings." Id. The Ninth Circuit focuses this fourth

inquiry on the interference that a federal court will create in state court if the federal court takes

1  the action requested.  Implicit in this prudential construction of the <u>Younger</u> doctrine is the

2  possibility that some – but not all – of the claims in a complaint implicate the court's duty to

3  abstain.

4        The court need not invoke <u>Younger</u> in addressing plaintiff's first and second

5  demands for relief.  <u>See</u> Fifth Amended Complaint at 10, ¶¶ 1-2.  The court has already screened

6  out the claim related to the first demand, pursuant to 28 U.S.C. § 1915A, finding that an order of

7  full release would effect habeas relief and is not, therefore, available in a civil rights action.  <u>See</u>

8  Findings and Recommendations at 4-5 (December 12, 2011, Docket No. 73).  The court need not

9  address the second demand because it seeks an order that would be directed solely at DMH.  <u>See</u>

10  Fifth Am. Complaint at 10, ¶ 2.

11        To the extent plaintiff seeks an order directed solely at CDCR to transfer him back

12  into the custody of the Department of Mental Health, the court need not go so far as invoke the

13  <u>Younger</u> doctrine.  As explained in numerous orders in this case, the party resisting plaintiff's

14  transfer from CDCR's custody to DMH's is DMH.  At no point in these proceedings has CDCR

15  changed its position in favor of transferring plaintiff back to Atascadero State Hospital, or

16  wherever DMH sees fit to place him.  That has been CDCR's position going back at least twelve

17  years, to 2000.  <u>See</u> First Am. Pet., Ex. N.  There is, therefore, no claim – and no need – for an

18  injunction ordering CDCR to transfer plaintiff to the custody of DMH, because CDCR does not

19  require the coercion of a court order.  Nor would such an order have any meaningful effect: as far

20  as plaintiff's custody is concerned, the only meaningful order possible would be one directed at

21  both defendant agencies, in which DMH would be required to take plaintiff back.  The court has

22  already ruled it will abstain from taking that course, pursuant to <u>Younger</u>, but <u>Younger</u> abstention

23  is a non-starter for any claim directed solely at CDCR regarding a transfer of plaintiff's custody

24  to DMH.

25  \\\\\

26  \\\\\

7

C.   Claims for injunctive and declaratory relief regarding mental health treatment

Plaintiff's third demand for relief seeks an injunction in which CDCR or DMH, whichever has custody, must provide a "timely and suitable outpatient community treatment program" to meet his mental health needs.  Fifth Am. Complaint at 10, ¶ 3.  His fourth demand seeks "[a] finding that there is no rehabilitation program in [the] CDCR prison system that is suitable for plaintiff while he remains under the status of 'not guilty by reason of insanity.'"  Id. at ¶ 4.  This demand for declaratory relief further seeks a ruling that, as long as plaintiff is in CDCR's custody, "the principles enunciated in Coleman v. Schwarzenegger ... are being violated by the lack of adequate mental health treatment" and, even further, that he "is being denied access to the rights and benefits conferred upon him by Penal Code Sections 1603, 1604 and 1026.2, as a committed mental health patient and as an incarcerated individual."[4]  Id.  Inasmuch as these two demands seek equitable relief concerning the mental health treatment that plaintiff receives from CDCR, the court will consider them together.[5]

Plaintiff's reference to Coleman v. Schwarzenegger spotlights the path that his case against CDCR for adequate mental health treatment must follow.  Coleman is the long-pending class action that "arose from a statewide concern by prisoners within [CDCR] that the CDCR 'did not have a systematic program for screening and evaluating inmates for mental illness,' as well as a concern that the CDCR mental health staff was 'constitutionally inadequate.'"  Jones v. Vail, 2012 WL 1988291 at *3 (S.D.Cal., June 4, 2012) (quoting Coleman, 912 F.Supp 1282, 1305, 1307 (E.D.Cal.1995)).[6]  The Coleman class was certified in 1991 and

---

[4] Penal Code §§ 1603 and 1604 outline the processes by which a person committed to the custody of DMH may qualify for outpatient care.  Section 1026.2 defines the process by which a committee petitions for restoration of sanity and release.

[5] One aspect of the third demand is not actionable against CDCR.  Plaintiff specifically seeks access to CONREP, or the Forensic Conditional Release Program run by DMH.  As plaintiff acknowledges, CONREP is "only available through the DMH, not the CDCR[.]" Id. at ¶ 3.

[6] Coleman is docketed in this court as Civil Action No. 2:90-cv-0520 LKK JFM P.

1   consists of "'all inmates with serious mental disorders who are now, or will in the future be,

2   confined within the [CDCR].'" Id. (quoting Coleman (Order of July 23, 1999, Docket No.

3   1054)). DMH is a defendant in Coleman and has been, at least at some points in the history of

4   that case, "responsible for the provision of inpatient mental health care for men housed in

5   CDCR." Coleman v. Brown, 2011 WL 4553062 at *3 (E.D.Cal., June 13, 2011).

6           Contrary to CDCR's argument, plaintiff is a member of the Coleman class. As

7   the court that oversees Coleman has defined it, an individual is a member of the class if he or she

8   is (1) an "inmate with a serious mental disorder" who is (2) "confined within CDCR." Coleman,

9   Order of July 23, 1999 (Docket No. 1054). Plaintiff satisfies both requirements. It is of no

10  moment that "[s]tate law and CDCR regulations distinguish DMH patients from state prisoners

11  in CDCR's custody[.]" Defendant's Memorandum at 6 (Docket No. 97). CDCR points to no

12  ruling from the court in Coleman that draws any such distinction for purposes of defining the

13  class. DMH's status as a defendant in Coleman suggests that the distinction makes no difference

14  to class membership. None of the laws or regulations that CDCR cites supports the perverse

15  result that would arise from declaring plaintiff is outside the class – that is, that transferring a

16  person adjudicated NGI from a state hospital to a state prison deprives that patient-cum-inmate of

17  the mental health attention to which Coleman class members, virtually all of whom are

18  incarcerated pursuant to a judgment of guilt, are entitled. Furthermore, the statute that authorized

19  plaintiff's transfer to CDCR contemplates that the level of mental health treatment ordinarily

20  provided by the DMH will continue after transfer, not abate. It states that if the Director of DMH

21  determines that a patient "needs care and treatment under conditions of custodial security which

22  can be better provided within the [CDCR], the person may be transferred for those purposes ... to

23  an institution under the jurisdiction of [CDCR]." California Welfare and Institutions Code §

24  7301 (emphasis added). "Those purposes" include the "treatment" afforded somebody who was

25  originally committed to the custody of the Department of Mental Health as well as the "custodial

26  security" provided by CDCR's expertise. In other words, a person transferred to CDCR under §

9

1    7301 effectively carries a dual status of DMH "patient" and CDCR "inmate."  Indeed, CDCR's

2    reliance on its internal classification of inmates transferred from DMH under § 7301 as "health

3    patients" can only reflect this dual status, since it cannot seriously be argued that such "patients"

4    are not also, as a matter of fact, "inmates" in the state prison system.  See Memorandum at 7

5    (Docket No. 97).

6         Plaintiff thus fits within the definition of the Coleman class.  Accepting his

7    allegations in this case as true, and in light of his legal status as an NGI since 1984, he qualifies

8    as one of Coleman's "inmates with serious mental disorders who are... confined within the

9    California Department of Corrections and Rehabilitation."  Jones, supra (quoting Coleman

10   (Order of July 23, 1999, Docket No. 1054)).

11        The court's finding that plaintiff belongs in the Coleman class is dispositive of his

12   claims for injunctive relief regarding his mental health care treatment while he is in the custody

13   of CDCR.  "Individual suits for injunctive and equitable relief from alleged[ly] unconstitutional

14   prison conditions that are the subject of an existing class action 'must be made through the class

15   representative until the class action is over or the consent decree is modified.'"  Valdez v. Forte,

16   2010 WL 4861459, at *2 (E.D.Cal. Nov. 22, 2010) (citation omitted).  This court has applied that

17   rule to equitable claims that fall under the purview of the Coleman class action.  See, e.g., Hollis

18   v. Sloan, 2010 WL 3034707 (E.D.Cal. July 28, 2010).  Because plaintiff is already a member of

19   the Coleman class, he cannot maintain an individual action for injunctive or declaratory relief

20   related to the mental health treatment he receives from CDCR.  He must instead seek it through

21   the Coleman action, and this court must dismiss his claims for equitable relief without prejudice.[7]

22   \\\\\

23   \\\\\

24

25   [7] Should the district judge (or some higher judicial authority) assigned to Coleman
     determine that plaintiff is not, in fact, a Coleman class member, the dismissal of this case without
     prejudice would enable him to file a new action for relief related to the mental health treatment
26   he receives from CDCR.

D.   State law claims for intentional and negligent infliction of emotional distress

Plaintiff claims that prison officials knowingly and intentionally inflicted mental trauma to which he was vulnerable because of his psychological condition.  See Fifth Am. Complaint at 9, ¶¶ 38-39.  A federal cause of action by a prisoner for emotional or mental suffering must be accompanied by a specific allegation of physical injury.  Oliver v. Kelly, 289 F.3d 623, 628-29 (9th Cir.2002) (applying 42 U.S.C. § 1997e(e)).  Here, plaintiff does not aver any physical injury, so his claim for infliction of emotional distress sounds only under state law.

"Several California courts have held that [California Government Code] Section 844.6(a) immunizes public entities from liability for various state law causes of action."  Beed v. County of Los Angeles, 2007 WL 1723717 at *3 (C.D. Cal. June 7, 2007).  Claims for intentional and negligent infliction of emotional distress are among these causes of action for which CDCR cannot be held liable.  See Wright v. State, 122 Cal.App.4th 659, 672 (Cal.App. 3 Dist., 2004).  Therefore, those claims should be dismissed from this case.

Accordingly, IT IS HEREBY RECOMMENDED that the amended motion to dismiss (Docket No. 97) be granted as follows:

1.   The following claims for damages or retrospective injunctive relief against CDCR be dismissed with prejudice, as CDCR is immune from such liability under the Eleventh Amendment: (a) for alleged violations of plaintiff's right to free exercise of his religion as a Native American; (b) for alleged violations of due process; (c) for alleged indifference to his mental health needs; and (d) for allegedly unconstitutional conditions of confinement.

2.   All claims for declaratory or prospective injunctive relief related to plaintiff's mental health treatment while he is in the custody of CDCR be dismissed without prejudice in light of the pre-existing class action Coleman v. Brown, Civil Action No. 2:90-cv-0520 LKK JFM.

3.   Plaintiff's claims for intentional and negligent infliction of emotional distress against CDCR be dismissed with prejudice.

4.  This case shall be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: September 26, 2012

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

3
domi0301.57(2)

12